# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LESTER WARD,                                    Civil Action No. 1:06-cv-301
          Petitioner,

                                                Spiegel, J.
          vs.                                   Hogan, M.J.

ERNIE MOORE, WARDEN,                            **REPORT AND**
          Respondent.                           **RECOMMENDATION**

         Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus

pursuant to 28 U.S.C. §2254.  The case is now before the Court upon the petition (Doc. 1),

respondent's return of writ and exhibits thereto (Doc. 3), and petitioner's traverse and notice of

supplemental authority. (Docs. 4, 5).

## I.       PROCEDURAL HISTORY

         This case involves the following facts, as summarized by the First District Ohio Court of

Appeals:[1]

         {¶2}  In November 2003, a hidden compartment was found in Ward's van.
         There were coffee grounds–often used to mask the odor of narcotics–in the
         compartment.  The police discovered that the van had been driven approximately
         120,000 miles in a year and a half.  Based on this information, the police obtained
         a warrant to place a global positioning device on the van.

         {¶3}  A few days later, the van left Cincinnati and went straight to Miami,
         Florida.  After spending only about eight and a half hours there, the van started
         back toward Cincinnati.

         {¶4}  The police then filed an affidavit seeking a search warrant for the
         van.  The affidavit included information about the hidden compartment, the
         presence of coffee, and the great distance traveled in a short time.  It also stated

---

[1]  The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

that various sources had told the police that Ward and his son were probably transporting cocaine from Miami, and that there would be narcotics or evidence of narcotics in the van.  Based on this information, the police obtained a search warrant to allow the police to search the van once it reentered the jurisdiction.

{¶5}  Shortly after its return, police searched the van and found over 1000 grams of cocaine in the hidden compartment.  Ward was arrested and charged with possession of cocaine, trafficking in cocaine, and possessing criminal tools.  The first two counts also included major-drug-offender specifications.

{¶6}  Ward moved to suppress the evidence obtained during the search of his van.  He argued that the evidence was the fruit of an unlawful anticipatory warrant.  When the trial court denied Ward's motion, he pleaded no contest.  The trial court then sentenced Ward to 20 years' imprisonment:  two mandatory 10-year sentences to run consecutively.

(Doc. 3, Exh. F at 2-3).

Petitioner was indicted by the December 2003 Term of the Hamilton County, Ohio Grand Jury on one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A), with a major drug offender specification, one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(2), with a major drug offender specification, and one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A). (Doc. 3, Exh. A).  Petitioner entered a plea of not guilty upon arraignment.  Prior to trial, petitioner withdrew his guilty plea and entered a plea of no contest. (Doc. 3, Exh. B).  On June 17, 2004, petitioner was found guilty as charged and sentenced to serve ten years on the possession of cocaine charge and ten years on the trafficking in cocaine charge to be served consecutively for a total of twenty years.  The possessing criminal tools charge and specifications were merged for sentencing. (Doc. 3, Exh. C).

Petitioner, through new counsel, filed a timely appeal to the First District Court of Appeals and presented two assignments of error:

1. The Ohio and the United States' Constitution[s] require evidence obtained in violation of a defendant's Fourth Amendment rights to be excluded from the trial of the defendant. Evidence obtained pursuant to an anticipatory search warrant without a triggering event, is obtained in violation of the defendant's constitutional rights. Did the trial court violate Lester Ward's rights by allowing admission of evidence obtained in such a manner to be used against the defendant at trial?

2. The trial court erred by sentencing Lester Ward in violation of his Constitutional rights.

(Doc. 3, Exh. D). The State filed a brief in response. (Doc. 3, Exh. E). On June 17, 2005, the

Court of Appeals affirmed the judgment of the trial court. (Doc. 3, Exh. F).

Petitioner, through new counsel, appealed to the Supreme Court of Ohio and raised the

following propositions of law:

1. Anticipatory warrants may be issued only if the suspected contraband is on a sure course for the jurisdiction in the near future.

2. Neither the good faith exception nor the automobile exception to the warrant requirement apply to a search pursuant to an invalid anticipatory warrant.

(Doc. 3, Exh. G). The State filed a response. (Doc. 3, Exh. H). On November 9, 2005, the

Supreme Court of Ohio declined jurisdiction and dismissed the appeal as not involving any

substantial constitutional question. (Doc. 3, Exh. I).

Meanwhile, on September 12, 2005, petitioner filed a *pro se* application to reopen his

direct appeal pursuant to Rule 26(B), Ohio Rules of Appellate Procedure, presenting a claim of

ineffective assistance of appellate counsel. (Doc. 3, Exh. J). The State filed a response. (Doc. 3,

Exh. K). On November 7, 2005, the Ohio Court of Appeals denied the application to reopen

finding that petitioner failed to set forth in his application "assignments of error or arguments in

support of assignments of error that *previously were not considered on the merits* in the case *by

any appellate court*." (Doc. 3, Exh. L at 1, emphasis in the original). The Court of Appeals

further found that petitioner could have raised the matters set forth in his application in his appeal to the Ohio Supreme Court, but did not.  Therefore, the Court also denied the application on res judicata grounds. (Doc. 3, Exh. L at 2).

Petitioner appealed the denial of his application to reopen to the Ohio Supreme Court and raised the following propositions of law:

1.  The trial court failed to comply with the sentencing statutes.

2.  Appellant received ineffective assistance of counsel.

(Doc. 3, Exh. M).  The State filed a response. (Doc. 3, Exh. N).  On February 8, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. 3, Exh. O).

On May 19, 2006, petitioner filed a petition for writ of habeas corpus in this federal court.  The Petition for Writ of Habeas Corpus raises the following grounds for relief:

**GROUND ONE**: A search conducted under an anticipatory warrant without probable cause or a triggering event, and outside the territorial jurisdiction of the issuing court is illegal and evidence obtained thereby was erroneously not suppressed, in violation of Petitioner's rights under the Fourth Amendment and under Due Process of Law.

**GROUND TWO**: Petitioner was sentenced to a sentence beyond the statutory maximum based on fact-findings not found beyond a reasonable doubt by a jury and without any notice or opportunity to respond, and without any valid jury waiver, in violation of the Sixth Amendment.

(Doc. 1).

4

## II.  STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

5

## III.  GROUND ONE IS WITHOUT MERIT.

Ground One of the petition asserts that petitioner's conviction was obtained by use of evidence gained as a result of a search pursuant to an invalid anticipatory warrant in violation of the Fourth Amendment.  In overruling this assignment of error, the Ohio Court of Appeals stated:

> {¶ 8} In his first assignment, Ward argues that the cocaine seized from the secret compartment of his van should have been suppressed because the anticipatory warrant was improper, there was no independent probable cause to search the vehicle, and the good-faith exception to the warrant requirement did not apply. We first address Ward's argument concerning the anticipatory nature of the warrant.

> {¶ 9} To establish probable cause to issue a search warrant, an affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched.  And probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime.

> {¶ 10} When scrutinizing a search warrant for probable cause, reviewing courts should not substitute their judgment for that of the magistrate by reviewing all aspects of the magistrate's decision de novo.

> {¶ 11} Generally an affidavit in support of a search warrant relates to probable cause that already exists-that is, the evidence sought is already at a specified location.

> {¶ 12} But in rare circumstances that is not necessarily the case.  When the police can demonstrate probable cause "that at some future time, but not presently, certain evidence of crime will be located at a specific place to be searched," the magistrate may issue an anticipatory warrant.  Given proper facts, a magistrate can reasonably conclude that probable cause to search the premises exists and issue a warrant.  Courts have often stated that "[w]hen the evidence to be seized is on a sure and irreversible course" to a particular place, an anticipatory warrant may issue.

> {¶ 13} The best illustration of this is probably when the post office or a delivery company intends to deliver a package within a few hours.  Under that scenario, it is almost certain that the package will be delivered at a controllable time and that the police can search the delivery address after the package has

arrived.  The delivery can be a "triggering event" for execution of the warrant.

{¶ 14} Obviously, this case is not analogous to that type of delivery.  But that does not mean that the warrant was invalid.  The police had enough information to show probable cause that the van contained drugs at the time they sought the warrant.  And this was not a typical anticipatory warrant-neither the warrant nor the affidavit listed a specific triggering event.  But the van and the cocaine were not within the jurisdiction at the time.  The warrant therefore could not have been executed when it was issued.  The triggering event was simply the van's return to the jurisdiction.

{¶ 15} Ward argues that the driver could simply have turned around or dropped off the cocaine along the way.  But there was probable cause that the van would return to Cincinnati at some future time and contain evidence relevant to the warrant.  There were no constitutional problems like there would be for a package delivery-if the package was not delivered and the police searched the house, it would be an intrusion-that is why the delivery has to be on its way and substantially certain to occur.  Here, if the van turned around, the warrant would not be served, so there would be no intrusion.

{¶ 16} We hold that if there is probable cause to believe that a vehicle contains contraband, an anticipatory warrant may issue for the search of the vehicle when-and if-it reaches the jurisdiction.  Obviously, the normal requirement that a warrant be executed in a timely manner still applies.  Had Ward's van taken two weeks to get back to Cincinnati, probable cause would have lapsed.  But the van came straight back to the jurisdiction, and the warrant was executed in a timely manner.

(Doc. 3, Exh. F at 3-5)(footnotes and citations omitted).  The Court of Appeals then went on to

discuss relevant cases from other jurisdictions on the issue of anticipatory search warrants based

on probable cause concerning a vehicle not in the jurisdiction (Doc. 3, Exh. F at 6-9) and

concluded:

{¶ 28} There was no problem with the warrant that the police obtained in this case-it is a far better practice to obtain a warrant such as this than just to assume probable cause exists and to make warrantless searches.  The police are in a much better legal position to have a search upheld if it is conducted under a warrant.

{¶ 29} The trial court correctly denied Ward's motion to suppress.  We therefore overrule Ward's first assignment of error.

(Doc. 3, Exh. F at 9).  The Ohio Court of Appeals went on to discuss whether the search and seizure would have been constitutional even in the absence of a warrant:

{¶ 30} Even if the police had not properly obtained a warrant, their search and seizure would not have been unconstitutional.  Once a law-enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based on the well-established automobile exception to the warrant requirement.  And automobiles may be stopped without a warrant as long as there is a reasonably articulable belief that an offense has been committed or that the vehicle contains contraband.

{¶ 31} A warrantless search must be supported by probable cause that is based on objective facts that could justify the issuance of a warrant by a magistrate.  And this determination involves an examination of the totality of the circumstances by using common sense in deciding whether there is a fair probability that contraband or evidence of a crime will be found.  From a constitutional perspective, there is no difference between seizing and holding a vehicle while waiting for a search warrant and immediately searching the vehicle, so long as probable cause exists.

{¶ 32} In this case, for all the same reasons that the officer listed in his affidavit to obtain the warrant, the police had probable cause to believe that the van contained drugs or evidence relating to drugs-the hidden compartment, the coffee grounds, and the great number of miles traveled in a short time all pointed in that direction. And because of the global positioning device, the officers knew that the van had just driven all the way to Miami, stopped for only eight and a half hours, and then come back.

{¶ 33} Ward spends much of his brief explaining why each of these facts did not establish probable cause.  And we agree, at least as far as each individual fact goes.  If the police knew only that Ward's van contained a secret compartment, there would have been no probable cause.  If they knew only that the van had been driven 120,000 miles in a year and a half, there would have been no probable cause.  Or if they knew only that the van traveled to Miami, spent a short time there, and turned right back around, there would have been no probable cause.

{¶ 34} But under the totality of the circumstances-the compartment plus the coffee plus the informants plus the mileage plus the timing-everything began to add up.  The police had probable cause to believe that Ward's van was being used to transport drugs.  They therefore had the right to stop and search the van without a warrant.  But as we have said earlier, it is always better to have a warrant when it may not be necessary than not to have one when it is necessary.

{¶ 35} Because the police had probable cause to search the vehicle, and because the warrant was in any event valid, we need not address Ward's argument that the good-faith exception to the warrant requirement did not apply.

(Doc. 3, Exh. F at 9-11)(footnotes and citations omitted).

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal search or seizure in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. *Riley*, 674 F.2d at 526.  Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Petitioner presented his Fourth Amendment claim to the trial court, the Ohio Court of Appeals, and the Supreme Court of Ohio.  The trial court held a suppression hearing (Doc. 3, Exhs. Q at 3-55) and issued a reasoned opinion on the record. (Doc. 3, Exhs. Q at 55-59). Petitioner appealed to the Ohio Court of Appeals which, as discussed above, found no merit to

9

Case: 1:06-cv-00301-SAS-TSH Doc #: 9 Filed: 08/15/07 Page: 10 of 29 PAGEID #: 313

the claim. (Doc. 3, Exh. F at 3-11). The Supreme Court of Ohio denied leave to appeal because it was not persuaded to review the issue. (Doc. 3, Exh. I). Petitioner does not allege he lacked a full and fair opportunity to present his Fourth Amendment claim to the state courts. Nor has he shown any failure of Ohio's procedural mechanism which prevented him from litigating his Fourth Amendment claim. *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000) ("Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial.").

Rather, petitioner contends that *Stone v. Powell* is no longer applicable after the enactment of the AEDPA. He asserts that as a matter of statutory interpretation this Court should now apply the terms of the AEDPA, rather than the *Stone* rule, to collateral search-and-seizure claims, citing *Carlson v. Ferguson,* 9 F.Supp.2d 654, 657 (S.D. W.Va. 1998), which held that the AEDPA does not exclude Fourth Amendment claims of state petitioners from its two-tiered analytical approach to reviewing state court adjudications. The undersigned disagrees with petitioner's assertion and notes that the holding in *Carlson* has not been followed by other courts. *See Hampton v. Wyant*, 296 F.3d 560, 562 -563 (7th Cir. 2002); *Herrera v. Lemaster*, 225 F.3d 1176, 1178 (10th Cir. 2000); *Smith v. Bradshaw*, 2006 WL 2233211 (N.D. Ohio 2006). This Court agrees with the analysis set forth in *Smith v. Bradshaw*, 2006 WL 2233211, that by enacting the AEDPA Congress did not intend to expand in any way a habeas petitioner's right to overturn a state court decision:

> Petitioner asserts that the state court rulings regarding his Fourth Amendment claims should be reviewed under the AEDPA before *Stone v. Powell,* 428 U.S. 465 (1976), may be applied. The AEDPA, in relevant part, outlines when federal courts should entertain and grant applications for writs of habeas corpus. 28

10

U.S.C. § 2254 (1996).  For a federal court to entertain a writ for habeas corpus by a petitioner in custody pursuant to a state court judgment, the petitioner must allege that his/her custody is in violation of the Constitution, laws, or treaties of the United States. *Id.* at § 2254(a).  *Stone,* on the other hand, applies specifically to Fourth Amendment claims and bars habeas review when those claims have been fully and fairly litigated in state court. 428 U.S. at 494.  According to *Riley v. Gray,* full and fair litigation, in accordance with *Stone,* requires two conditions: (1) adequate state mechanisms for a remedy that protects the Fourth Amendment rights in the abstract; and (2) the absence of those mechanisms' failure in application to the case at hand. 674 F .2d 522, 526 (6th Cir. 1982).

Fourth Amendment claims are given different treatment than other constitutional claims in habeas proceedings because the primary purpose of excluding evidence that was obtained through illegal search or seizure is deterrence of unlawful police behavior. *Stone,* 428 U.S. at 483.  Because further review of police behavior in federal courts, after full litigation in state court, would do little to advance the rule's preventative purpose, the Constitution does not require habeas review of Fourth Amendment claims. *Id.*  Therefore, fairly and fully litigated Fourth Amendment claims may not be asserted in petitions for habeas corpus under the AEDPA because being held in custody despite these claims does not violate the Constitution. *Id.* at 494.

Though Petitioner correctly points out that *Stone* predates the AEDPA, analysis under both sources of law is not inconsistent.  *See Machacek v. Hofbauer,* 213 F.3d 947, 952-54 (6th Cir.2000), *cert. denied ,* 531 U.S. 1089 (2001) (applying *Stone* to a Fourth Amendment claim of illegal arrest, while proceeding further into the AEDPA analysis to apply § 2254(d)(1)-(2) to claims of violations of the right to counsel and *Miranda* warnings).  The established federal law articulated in *Stone* addresses the most basic requirement for federal habeas corpus jurisdiction under the AEDPA: custody in violation of federal law. 28 U.S.C. § 2254(a).  If, because of *Stone,* Fourth Amendment claims fail to render an individual's custody in violation of federal law, analysis under the AEDPA need not proceed further to address the requirements of § 2254(d)(1)-(2).  In contrast to Petitioner's assertion that enforcing *Stone* relegates the AEDPA to secondary status, *Stone* gives meaning to the most basic requirement of the AEDPA.

*Smith v. Bradshaw*, 2006 WL 2233211, *3 -4.  The AEDPA does not affect *Stone* because the

"changes to § 2254(d) apply only to cases within the scope of § 2254(a), which was not amended

in 1996 [by the AEDPA], and *Stone* is based on an interpretation of § 2254(a) that treats

inaccurate administration of the exclusionary rule as outside the scope of that statute." *Hampton,*

11

296 F.3d at 562 -563. Thus, the Court finds no merit to petitioner's contention that the *Stone* analysis does not survive the AEDPA.

      Accordingly, any claim concerning the validity of the search of petitioner's automobile is not cognizable on habeas review pursuant to *Stone v. Powell*. Therefore, petitioner's first ground for relief does not warrant federal habeas relief in this matter.

## IV. GROUND TWO IS PROCEDURALLY DEFAULTED AND WAIVED.

      Ground Two of the petition asserts that petitioner was given a sentence beyond the statutory maximum based on fact-findings not found beyond a reasonable doubt by a jury in violation of the Sixth Amendment and the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely,* the U.S. Supreme Court held that, other than the fact of a prior conviction, a judge may not impose a sentence above the statutory maximum based on aggravating factors which were not presented to a jury and found by that jury beyond a reasonable doubt. *Blakely,* 542 U.S. at 301. The *Blakely* Court clarified that "the 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.*

      Petitioner states he was sentenced to two consecutive ten-year terms of incarceration under Ohio Rev. Code §§ 2929.14(B) and (E)(4) beyond the "statutory maximum" based on facts not admitted to by petitioner nor or found beyond a reasonable doubt by a jury. The petition indicates this claim was raised on direct appeal to the Ohio Court of Appeals, but omitted from the first appeal to the Supreme Court of Ohio. (Doc. 1 at 8-9). Petitioner states he raised this claim in his application to reopen the direct appeal pursuant to Ohio Appellate Rule

26(B) and timely appealed the denial of such application to the Ohio Supreme Court. (Doc. 1 at 9).

In addressing this claim on direct appeal, the First District Court of Appeals found as follows:

> {¶ 36} In his second assignment, Ward argues that the trial court sentenced him in violation of his constitutional rights. Ward bases his argument almost entirely on the United States Supreme Court's rulings in *Ring v. Arizona,* [536 U.S. 584 (2002)], *Blakely v. Washington,* 542 U.S. 296 (2004)], and *United States v. Booker,* [125 S.Ct. 738 (2005)].

> {¶37} But those cases apply only to the length of sentences when judicial factfinding is necessary to increase the sentence. Ward was charged with possessing and trafficking in over 1000 grams of cocaine. The 10-year sentences were therefore mandatory. [citing R.C. 2925.11(C)(4)(f); R.C. 2929.03(C)(4)(g); R.C. 2929.14(A)(1)]. *Ring, Blakely,* and *Booker* had no bearing on Ward's maximum sentences.

> *
> *
> *

> {¶ 39} We have already held that *Blakely* and *Booker* do not apply to consecutive sentences. [citing *State v. Montgomery,* 159 Ohio App.3d 752, 2005-Ohio-1018, 825 N.E.2d 250]. So the only question that remains is whether Ward's consecutive sentences were contrary to law.

> {¶ 40} To impose consecutive sentences, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." [citing R.C. 2929.14(E)(4)]. The trial court must also make one of the following findings: (1) when the offender committed the offenses, he was awaiting trial or under community control; (2) the harm caused by the multiple offenses was so great or unusual that no single prison term would adequately reflect the offender's conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. [citing Id.] The trial court must also make these findings on the record. [citing See *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473].

13

{¶ 41} Here, the trial court stated that consecutive sentences were warranted to fulfill the sentencing purposes-namely, to protect the public and to punish the offender. The court noted that one 10-year sentence would be insufficient based on the nature of the offenses because of the amount of the cocaine involved. It stated that imposing only the minimum sentence would both demean the seriousness of the offenses and not adequately protect the public.

{¶ 42} The trial court continued, "I also indicated that consecutive terms are necessary, based on what has been said, and that is the harm caused was great and/or [sic] unusual; and that consecutive sentences are necessary to fulfill the import of Senate Bill 2, being 2929.11."

{¶ 43} The only thing that the trial court did not specifically say was that the consecutive sentences were not disproportionate to the seriousness of Ward's conduct and the danger that he posed to the public. But the trial court did stress that the amount of cocaine involved in this case was unusually large and that one 10-year sentence would not be sufficient. And the court was not required to pronounce talismanic words to comply with the guidelines and factors for sentencing. [Citing *State v. Mateo,* 150 Ohio App.3d 489, 2002-Ohio-6852, 782 N.E.2d 131, citing *State v. Edmondson,* 86 Ohio St.3d 324, 1999-Ohio-110, 715 N.E.2d 131].

{¶44}  We therefore overrule Ward's second assignment of error and affirm the trial court's judgment.

(Doc. 3, Exh. F at 11-13).

Respondent contends that Ground Two of the petition is procedurally defaulted and therefore waived because petitioner failed to raise his sentencing claim on discretionary appeal to the Supreme Court of Ohio from the First District Court of Appeals' denial of such claim. (Doc. 3 at 10).  Respondent further argues that petitioner's Rule 26(B) application to reopen alleging ineffective of appellate counsel did not cure the default because the challenging of appellate counsel's effectiveness for failure to litigate a direct appeal claim is not the same as raising the underlying claim itself.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and

federal courts, a state defendant with federal constitutional claims must first fairly present those

claims to the state courts for consideration before raising them in a federal habeas corpus action.

*See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*);

*Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be

presented to the state's highest court in order to satisfy the fair presentation requirement.  *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th

Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831

(1985).  If the petitioner fails to do so, he may have waived the unraised claims for purposes of

federal habeas corpus review.  *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner

files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state

appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something at trial

to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or

file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the

merits in the state proceeding due to petitioner's failure to raise them as required by state

procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No

such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9. *See also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324.

To obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any

17

unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

In the instant case, the Court finds that Ground Two of the petition is procedurally defaulted and waived.  Ground Two raises two alleged *Blakely* violations: that petitioner was sentenced to more than the maximum of three years under Ohio Rev. Code §§ 2929.14(B), and to consecutive sentences under Ohio Rev. Code § 2929.14(E)(4) based on facts not admitted to by petitioner nor found beyond a reasonable doubt by a jury.  Petitioner acknowledges that his appellate counsel, on direct appeal, argued that the imposition of more than the statutory minimum term of three years under Ohio Rev. Code § 2929.14(B) violated his Sixth Amendment rights under *Blakely*.  However, petitioner asserts that the issue of the imposition of *consecutive* sentences based upon judicial fact finding in violation of *Blakely* was never raised in the direct appeal due to his counsel's ineffectiveness.  He contends the consecutive sentencing issue was raised for the first time in his Rule 26(B) application to reopen his direct appeal.  Since petitioner appealed the denial of his application to reopen to the Ohio Supreme Court, he contends the consecutive sentencing issue was not procedurally defaulted and is therefore ripe for habeas review by this Court.

Contrary to petitioner's contention, the record shows that both issues, the imposition of ten years instead of three years imprisonment and the imposition of consecutive sentences were raised on direct appeal in the Ohio Court of Appeals.  Although the consecutive sentencing issue was raised in only a general sense with the focus of the argument on the number of years to which petitioner was sentenced, the State specifically addressed the imposition of consecutive sentences in its responsive brief (Doc. 3, Exh. E at 7-8) and, more importantly, the Ohio Court of Appeals squarely addressed the consecutive sentencing issue in its decision as discussed above.

18

Thus, contrary to petitioner's assertion, the consecutive sentencing issue was not procedurally defaulted in the Ohio Court of Appeals.  Rather, the procedural default in this matter occurred when petitioner failed to include *any Blakely* sentencing claims as a Proposition of Law for review in the Supreme Court of Ohio on discretionary appeal.  *See Leroy v. Marshall,* 757 F.2d 94, 97, 100 (6th Cir. 1985).  Petitioner has thus procedurally defaulted  his sentencing claims for purposes of federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional error.  *See id.*  Consequently, petitioner is now barred by his procedural default from pursuing relief in the state courts of Ohio. *Leroy*, 757 F.2d at 100.

Nor did petitioner's belated attempt to raise the issues in his Rule 26(B) application to reopen "cure" the default or resurrect his sentencing claims.  The Ohio Court of Appeals denied the motion to reopen on procedural grounds and not by examining the underlying merits of the sentencing claims raised by petitioner.  The First District Court of Appeals determined that petitioner, in contravention of Rule 26(B)(2)(c), failed to set forth "assignments of error or arguments in support of assignments of error that *previously were not considered on the merits* in the case *by any appellate court*." (Doc. 3, Exh. L at 1, emphasis in the original).[2]  The Court of Appeals further found the application was barred by res judicata. (Doc. 3, Exh. L at 2).  Because the Ohio Court of Appeals relied on procedural bars to deny the application to reopen, petitioner's claims remain procedurally defaulted for purposes of his habeas corpus petition.  *See James v. Brigano*, 470 F.3d 636, 640-643 (6th Cir. 2006); *Lott v. Coyle*, 261 F.3d 594, 607 (6th

---

[2]Rule 26(B)(2)(c) provides that an application for reopening shall contain "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation."

Cir. 2001).

Accordingly, Ground Two of the petition is barred by procedural default unless cause and prejudice or a miscarriage or justice excuses the default.

To the extent petitioner suggests that counsel on direct appeal to the Ohio Court of Appeals and new counsel on appeal to the Supreme Court of Ohio were ineffective and that such ineffectiveness is "cause" for the procedural default, the Court disagrees.

Ineffective assistance of appellate counsel may constitute "cause" for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488; *see also Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 668 (6th Cir.) (per curiam), *cert. denied,* 126 S.Ct. 653 (2005). In order to establish such a claim, petitioner must demonstrate that his attorney on direct appeal made such serious errors that (1) he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) such deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must show that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

20

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different.  *See id.* at 694.  Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *Id*. at 697.

In the instant case, even assuming that petitioner's brief in support of his direct appeal can be construed as failing to raise the issue of the imposition of consecutive sentences as violative of *Blakely,* petitioner has failed to establish he suffered any prejudice as a result of this alleged failure.  Despite appellate counsel's alleged failure to raise or fully brief the issue of the imposition of consecutive sentences, the Ohio Court of Appeals nevertheless addressed and ruled on the precise issue, finding *Blakely* and *Booker* do not apply to consecutive sentences under then-existing First District Court of Appeals precedent. (Doc. 3, Exh. F at 12).[3]  Since the Ohio

_____

[3]In *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), *cert. denied,* 127 S.Ct. 442 (2006), the Supreme Court of Ohio, based on *Blakely*, found several provisions of Ohio's felony sentencing structure to violate the Sixth Amendment.  Relevant to petitioner's case, the court found that "with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge." *Foster,* 109 Ohio St.3d at 21, 845 N.E.2d at 491.  The court ruled: "Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional." *Id.* at 2, 845 N.E.2d at 475 (syllabus, ¶ 3).  The court also ruled, however, that: "R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms." *Id.* at 2, 845 N.E.2d at 475 (syllabus, ¶ 4).  As a result, Ohio "trial courts are now *no longer required to make any findings or give any reasons* when imposing consecutive sentences." *Minor v. Wilson,* No. 05-3534, 2007 WL 106771, at *6 n. 1 (6th Cir. Jan. 17, 2007)(emphasis added).

Although the Ohio Supreme Court subsequently struck down as unconstitutional Ohio's consecutive

Court of Appeals viewed petitioner's brief as raising a *Blakely* claim and in fact addressed his sentencing claim on the merits, there was no procedural bar to petitioner appealing such claim to the Supreme Court of Ohio in order to preserve such claim for habeas review.  Thus, petitioner has failed to demonstrate that a "reasonable probability" exists that, but for his appellate counsel's alleged failure to raise the consecutive sentencing claim, the result of the direct appeal proceeding would have been different. *Strickland*, 466 U.S. at 694.[4]

Therefore, petitioner has failed to show he was prejudiced by appellate counsel's alleged failure in this case.  Accordingly, even if petitioner's direct appeal can be construed as not raising the imposition of consecutive sentences in violation of *Blakely*, his counsel's alleged failure to do so would not constitute ineffective assistance of counsel and cannot constitute "cause" for excusing the procedural default.

With respect to petitioner's Ohio Supreme Court counsel's alleged ineffectiveness for failing to raise any *Blakely* claims on discretionary appeal to that court, such failure does not constitute cause for the procedural default.  A defendant is entitled to the effective assistance of counsel on the first appeal of his conviction where such an appeal is a matter of right. *Evitts v. Lucey,* 469 U.S. 387, 396 (1985).  However, a defendant in a state criminal case does not have a

---

sentencing provision, this fact does not change this federal Court's habeas analysis concerning procedural default in this case.  Whether the Ohio Court of Appeals was correct or incorrect in its position that *Blakely* and *Booker* do not apply to consecutive sentences did not affect petitioner's ability to raise this claim on appeal to the Ohio Supreme Court, which he ultimately failed to do.

[4]The Court also notes that it would be difficult to establish "prejudice" at this point in time under the second prong of *Strickland*, because if petitioner's sentence were vacated and the case were returned to the state courts for re-sentencing at this juncture, the sentencing court would have full discretion under *Foster* to impose the same consecutive sentences without having to make any findings or giving any reasons for doing so.  *See Shafer v. Wilson*, No. 1:06-cv-0648, 2007 WL 315760, at *11 (N.D. Ohio Jan. 30, 2007).  *See also Parks v. Timmerman-Cooper*, Case No. 3:06-cv-361 (S.D. Ohio Feb. 26, 2007) (Report and Recommendation) (Merz, M.J.), *aff'd*, 2007 WL 1452621 (S.D. Ohio May 15, 2007)(Rose, J.).

constitutional right to counsel in pursuing discretionary review in the state supreme court. *Wainwright v. Torna,* 455 U.S. 586, 587 (1982). In Ohio, a criminal defendant's first appeal as of right is his direct appeal to the Ohio Court of Appeals, where he has the constitutional right to effective assistance of counsel in prosecuting that appeal. *See State v. Vaughn,* 241 N.E.2d 288 (Ohio Ct. App. 1968). The alleged errors at issue in the instant case occurred when petitioner sought to obtain further discretionary review by the Ohio Supreme Court, which had the authority under Rule III, § 6, of the Rules of Practice of the Supreme Court of Ohio, to decide whether or not to grant such an appeal. *See* Rule II, § 1(A)(2) and (A)(3), Rules of Practice of the Supreme Court of Ohio.[5]

With the assistance of court-appointed counsel to represent him on appeal, petitioner exercised his constitutional right to a first appeal as of right to the Ohio Court of Appeals. Upon the conclusion of that appeal, petitioner no longer had constitutionally protected rights, including the right to effective assistance of counsel, for the purpose of obtaining further discretionary review by the Ohio Supreme Court, which is at issue here. *Cf. Wainwright v. Torna*, 455 U.S. 586, 587-88 & n.4 (1982) (per curiam) (holding that petitioner was not denied due process by the state supreme court's dismissal of an untimely-filed application for discretionary review or by retained appellate counsel's failure to file a timely application for discretionary review with that court, because petitioner neither had an absolute right to appeal his conviction to the state

---

[5]In the Ohio Supreme Court, there are several types of appeals which include "appeals of right" in capital cases and in cases that originated in the court of appeals; "claimed appeals of right" in cases where the appellant claims the existence of a "substantial constitutional question;" and "discretionary appeals" in cases involving a felony or a question of public or great general interest. *See* Rule II, §1(A), Rules of Practice of the Supreme Court of Ohio. This non-capital case, which originated in the trial court, does not involve an appeal of right to the Ohio Supreme Court. Therefore, petitioner could invoke the court's appellate jurisdiction only as a "claimed appeal of right" or "discretionary appeal." The Rules of Practice of the Supreme Court of Ohio clearly provide that in such cases, the state supreme court has the discretion to determine whether or not to allow the appeal. *See* Rule II, §§ 1(A)(2) and 1(A)(3), and Rule III, § 6, Rules of Practice of the Supreme Court of Ohio.

supreme court nor a constitutionally-protected right to effective assistance of counsel in seeking discretionary review by the state supreme court); *Ross,* 417 U.S. at 610-19 (holding that the state was not constitutionally required to provide a criminal defendant with counsel on discretionary appeal to the state supreme court). *Cf. Mapson v. Russell,* 869 F.2d 1491 (table), No. 88-3959, 1989 WL 16211, at **1 (6th Cir. Feb. 23, 1989) (unpublished) (affirming denial of petition alleging ineffective assistance of post-conviction appellate counsel as "not cognizable in federal habeas corpus," because "[t]here is no right to counsel that arises under the sixth amendment in a discretionary appeal from a judgment of conviction").[6]

Accordingly, because petitioner had no constitutional right to the effective assistance of counsel in filing his discretionary appeal before the Supreme Court of Ohio, counsel's failure to raise any *Blakely* claims in such appeal on petitioner's behalf does not establish "cause" required to overcome the procedural default of petitioner's *Blakely* claims. *See Anderson v. Cowan,* 227 F.3d 893, 901 (7th Cir. 2000); *Harris v. Stegall*, 157 F.Supp.2d 743, 750 (E.D. Mich. 2001).

Petitioner has failed to establish cause and prejudice to excuse his procedural default of Ground Two of the petition. Nor has he demonstrated that failure to consider any procedurally defaulted claim will result in a fundamental miscarriage of justice. Accordingly, he has waived any constitutional claim associated with Ground Two of the petition for purposes of federal

---

[6]*See also DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2nd Cir. 2004) (because defendant did not have a right to counsel on a state discretionary appeal, he could not claim his counsel was ineffective in failing to present claims in request for leave to appeal); *Moore v. Cockrell,* 313 F.3d 880, 882 (5th Cir. 2002) (reaffirming holding in *Jackson v. Johnson,* 217 F.3d 360, 364-65 (5th Cir. 2000), that the scope of the right to appellate counsel "does not extend to filing a motion for rehearing following the disposition of [the] case on direct appeal," and concluding that because the "constitutionally secured right to counsel ends when the decision by the appellate court is entered," petitioner could not show that he was denied effective assistance due to his counsel's failure to timely notify him of the outcome of his appeal), *cert. denied,* 538 U.S. 969 (2003); *Miller v. Keeney,* 882 F.3d 1428, 1432 (9th Cir. 1989) (rejecting argument that "the right to direct appellate counsel continues to exist in the period between losing a direct appeal and filing for discretionary review").

habeas corpus review.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to Ground One of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on this claim.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  A certificate of appealability should not issue with respect to Ground Two of the petition which this Court has concluded is waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[7]

4.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:   8/15/2007                                      s/Timothy S. Hogan
        KI                                             Timothy S. Hogan, US Magistrate Judge

---

[7]        Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

25

United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LESTER WARD,                                        Civil Action No. 1:06-cv-301
       Petitioner,

                                             Spiegel, J.
       vs.                                       Hogan, M.J.

ERNIE MOORE, WARDEN,
       Respondent.


## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638

27

F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br><br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by ( *Printed Name* ) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Lester Ward # 475-552<br>Lebanon Corr. Inst.<br>P0. Box 56<br>Lebanon, OH 45036 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)* ☐ Yes | |
| 2. Article Number<br>*(Transfer from service label)* | 7002 0860 0000 1409 6236 | |

PS Form 3811, August 2001      Domestic Return Receipt      102595-02-M-1540

1:06cv301  Doc.9